Good morning, and may it please the Court. Jason Figueredo for Appellant Larry Cortinas. I'd like to reserve two minutes of my time for rebuttal, if possible. The issue in this case is whether Mr. Cortinas exhausted his administrative remedies. We believe dismissal was improperly granted because Mr. Cortinas's administrative remedies were effectively unavailable and therefore exhausted. The lower court relies on the theory that since Mr. Cortinas filed 18 previous appeals to the third level, that he lacked credibility to claim that he did not know that he still had available administrative remedies. This is mainly because prior to this appeal, he had received letters from the third level stating that he had next viable steps. However, we believe that this is wrong for two reasons. First, even if there were any administrative remedies still available to Mr. Cortinas, they were not capable of use at hand. And second ---- Kennedy, your voice drops off as you read what you're reading. Cortinas, Jr. Sorry. Kennedy, and I don't hear you. Cortinas, Jr. I'm sorry. First, even if there were any administrative remedies still available to Mr. Cortinas, they were not capable of use. Second, there are disputed facts whether Mr. Cortinas even knew if he had administrative remedies still available. Mr. Cortinas's administrative remedies were ---- Kennedy, isn't the issue here whether the July 30th letter was delivered to Mr. Cortinas and that told him that he had to appeal at the second level and not go to the third level? That is correct. That's one of the issues, I believe. However ---- Why don't you address what the record evidence is as to whether the July 30th letter was indeed delivered to Mr. Cortinas? So according to Mr. Cortinas, the letter did not accompany the decision. However, according to the CDCR, it is their custom and practice to include this letter with all decisions. So there's an issue of fact to be determined by the court below. And how did the court determine that? The court determined that since Mr. Cortinas received 18 previous letters with his previous decisions that it was more than likely that he received this letter. No, no, no. The court determined that because of the evidence that the regular procedure was to attach a letter such as the July 30th letter, Mr. Cortinas did receive it. Yes. So now, is that determination an abuse of discretion? Is it abuse of discretion? I just believe that ---- First of all, that's the standard we want to use, abuse of discretion, right? Correct. Or clearly erroneous, if it's an actual finding. Yeah. Clearly or no erroneous. So didn't the trier of fact have some evidence upon which a reasonable person could find that the letter was indeed attached? I believe it's because it's the CDCR's custom and practice to attach this letter, yes, it is reasonable to believe that it was attached. However, it doesn't necessarily mean it was attached. I mean, the humans make mistakes, and therefore, this could happen where they send out a letter that the letter is not attached. I mean, we all kind of do that when we send e-mails sometimes. We forget to attach an attachment. I believe that Mr. Cortines is saying that he did not receive this letter this time. He received the decision, but not the letter. But even if Mr. Cortines did not receive the attached July 30th letter, he was given notice that his appeal was denied. He was given notice that ---- On that front page. Correct. On the decision page. And so I guess I'm just trying to figure out, he knew how to appeal and about his option to appeal a cancellation decision. Why isn't that sufficient? I mean, because this was not his first one. He's had several others as the magistrate judge. Exactly. Mr. Cortines' argument is that with these 18 previous appeals, he was heavily medicated and did not really understand the process at the time, even though he partakes in it. But he has appealed before. Well, he has appealed to the third level before. He appealed this to the third level also, but it got rejected back down. We believe that ---- And he has access to the California Code of Regulations, doesn't he? He had one hour a day to go to the law library every day since he was in solitary confinement. I'm not sure if that's really enough for him to really understand the CDCR regulations and what needs to be ---- Well, we've made that determination before, haven't we, that when Petitioners like your client have access to the Code of Regulations and library access, that that is likely sufficient? Yes. That has been determined by this Court before. However, I don't think that Mr. Cortines really fully understood his next options to appeal. And just because he had dealt with this before, it doesn't mean that he doesn't need to be reminded of what has to happen. But is that your best argument at this point? No. My best argument, honestly, is that even if he did receive this letter, his administrative remedies were effectively unavailable to him. Well, let's talk about SAPP versus Kimbrough for a moment. I'm just trying to figure out if, in fact, he could appeal his cancellation decision. What distinguishes his case from SAPP? SAPP's cancellation, well, to be honest, I don't really know the distinguish between those two. SAPP's cancellation is a little different, mainly because SAPP received the letter, I'm guessing. I mean, you know, Your Honor, I'm not really certain on that, to be honest. Okay. So what's the best case, I guess, for your argument on behalf of Mr. Cortines that his administrative remedies, including the remedy to appeal his cancellation decision, were effectively unavailable to him? I believe that his remedies were effectively unavailable because the interview requirement required by Title 15 became a simple dead end for him. When on-site prison officials thwarted his ability to satisfy this requirement by misrepresenting his desire to — to — to — to — Mr. Figueredo. Yes. Judge McGee asked you your best case, not an analysis of the facts. My best case. I guess Nunez v. Duncan is my best case, because in that case, they lay out that a failure to time the exhaust and administrative remedy claim is excused if the plaintiff took a reasonable, appropriate step to exhaust his claim and he was precluded from exhausting his claim not by fault of his own. And we believe that Mr. Cortines reasonably and appropriately took the steps to file his claim. He went to the first level, second and third level, and when that was rejected, he was precluded from exhausting his claim, not by fault of his own, but because the on-site prison official was not getting him to fulfill this interview requirement, which is required for all appeals in the CDCR. And if someone is blocking him from obtaining or from — from being a part of this interview, it — it — it's automatically going to cancel his — his appeal, because he's not being asked to — to attend this interview. He — he's not going to be able to fulfill the interview, and then it's just going to cascade down every time he tries to file an appeal. Thank you very much. I turn over the questions. Good morning, and may it please the Court. My name is Jenia Parkman, and I'm arguing on behalf of all defendants at police. This case is decided by the plaintiffs' of the California Code of Regulations, which together require an inmate to exhaust a grievance to the third level of an administrative review before filing a lawsuit. In this case, it's undisputed that Mr. Cortinez did not exhaust his grievance to the third level of review. There's plenty of evidence to support the district court's finding that remedies remained available, and because the statutory exhaustion requirement of the PLRA is mandatory and strictly applied, there's no excuse for Mr. Cortinez's failure to exhaust. I'll take the Court to the facts here. Mr. Cortinez's grievance was canceled at the second level for refusing an interview, and he was informed of the cancellation and the reason for the cancellation on the grievance form itself and in a separate letter that was mailed to him. Those are on the record at SCR 225 and 22829, and Mr. Cortinez did not contest that he received both of those documents. A cancellation, unlike a denial, is not a decision on the merits and does not exhaust that level of administrative review. That rule is in the Code at 3084.1, subsection B. So an inmate cannot appeal a cancellation to the next level. So the question is, what is an inmate in Mr. Cortinez's position to do when he disagrees with the reason for a cancellation? Sotomayor, let's back up a little bit, if we can, okay? It seems like the district court made its finding that Mr. Cortinez did not receive the July 30, 2012, letter in part based on the fact that it was the custom and practice of the CDCR Appeals Office always to attach the letter. Is the fact that CDCR always attaches a letter sufficient for us to uphold, I guess, the finding of fact here? It seems like it would be an easy mistake and not a common mistake for someone to think something is attached. I know from lawyers, they think they attach something and it's not attached, even though it's always their practice to attach it. I'm just ‑‑ I'm a little uncomfortable with that finding. And what's your response to that? There's one ‑‑ at least one more piece of evidence here. First, I'll stress that this finding was made at the conclusion of an Albino hearing where four people testified, including Mr. Cortinez, and the Court's finding was based on a credibility determination about that testimony. There's also the actual grievance in this case that was returned from the third level. Mr. Cortinez admits that he received the grievance form, and that grievance form contained a notation that said, C, attach third-level response. Mr. Cortinez admits that he received that, and the Court did not find it credible that Mr. Cortinez would have seen that notation to see an attached response and would not have at least sought out that response if it really wasn't attached, especially in light of Mr. Cortinez's prior experience with the third level. Yeah. So the district court's factual determination here is what? I mean, it made a credibility determination, I guess, that Mr. Cortinez did receive it based on his demeanor? Well, the district court made a factual finding that Mr. Cortinez received that letter. That finding was supported by a testimony, as you said, from the third-level chief that it's the ---- It's a little different because there was no one here that said, I gave it to him. Right. But there was ---- Or he ---- I know he had it. It was like, we always attach it, so he must have gotten it. Well, it was a factual dispute. And the second piece of evidence that the Court pointed to was that the grievance said, see attached third-level response. That was on the grievance, and Mr. Cortinez admits that he received that grievance, that he read that letter, that he saw that. Yeah. And he says the letter wasn't attached. Right. And so the Court said that if that really was the case, Mr. Cortinez had multiple ways of seeking that response, and there's no evidence here that he sought out that response. And, I mean, there's also evidence here that he has previously filed, Form 22s, which is a way to officially tell the prison there's a service or some kind of action that I want. So he could have filed the Form 22 saying, hey, where's my response? He could have sent a letter to the third level. There's just no evidence that he didn't receive that response. And that's not credible that he didn't receive it in light of the notation that told him to see that attached response. Your position is, is once he saw that it said letter attached, he should have taken some action to say, I didn't get the letter? That's ---- Well, isn't that what he's done now? Is that what he's done now? He filed a lawsuit. And said I didn't get the letter. Right. But the ---- our position, and this Court's factual finding is that it's not credible that at the point where he ---- at the point when he received the letter ---- I'm sorry, at the point that he received the grievance, once he read that notation to see attached response, he wouldn't have taken action immediately to seek out that response, because ---- That was based on him having 18 prior complaints? Because he knows the system? It was a credibility determination based on evaluating Mr. Cortina's testimony. The 18 appeals come into play because each of those appeals came with a letter attached. So Mr. Cortina's knew that when he received a response from the third level, or any level, really, in this case, from the second level, he got a letter attached. He knew to expect not only the actual grievance form, that 602, but also to expect an attached letter that actually constitutes the official response of CDCR. Did he have access to the California Code of Regulations? Does he have library access? There is testimony from Captain ---- yes, Your Honor. Captain Campbell, at the Albino hearing on SCR 128, testified that the Title 15 was available in the prison library and that, therefore, Mr. Cortina would have had access to it, and that was at CSP Corcoran, where he was incarcerated. And this letter is not the only piece of evidence, as Your Honor has pointed out with that question, that the remedy of challenging a cancellation was available to Mr. Cortina's. There's also the Title 15, and there are two letters in this case that Mr. Cortina's received in response to prior appeals that informed him of the process under Section 3084.6, Subsection E, of how he can challenge a cancellation. One of those letters he received on November 9, 2011, and the second on March 7, 2012, just five weeks before he received a cancellation in this case. And those are in the record at 249 and 251. So there's plenty of evidence that the procedure of challenging cancellation was available at CSP Corcoran. There's also the matter of the continuance that Mr. Cortina's requested in this case. During the hearing, he asked for the continuance for two reasons. So he could request some so he can make a motion to compel about some privileged documents that were withheld, and so he could subpoena two witnesses, the warden  and the prosecutor. But during the Albino hearing, he offered to the court that it would be fine if the court reviewed those documents in camera, and he offered that those two witnesses, they wouldn't add anything to the proceedings. So on the basis of that, the court proceeded with the Albino hearing, and you cannot argue now that... But how often during this time period was he in solitary confinement? And doesn't that affect his access, or does it? That's what I'm asking both counsel. There's testimony that he was in the secure housing unit. When? I mean, throughout the whole time? I think he testified that he was there since he was placed at CSP Corcoran, but he would have had access to the library. He could have had access to the Title 15, and that was the testimony of Captain Campbell, and he hasn't contested that he would have... While he was in solitary? Yes, Your Honor. And the actual 602 form tells him that if he has any questions, this is at SCR 224, if he has any questions about how to proceed with the appeals process, he should consult Section 3084. So I want to go back to Sapp v. Kimbrell. At the time when Sapp was decided in 2010, the procedure if an inmate disagrees with a cancellation was to file a lawsuit and argue that improper screening prevented the inmate from exhausting remedies. And that was because back then a cancellation was the end of the line. It was a dead end. That changed by the time that Mr. Cortinez had filed the grievance in this case in February 21. I'm sorry, in February 21, 2012, under Section 3084.6, subsection E, an inmate could separately challenge the grievance. So if an inmate receives a cancellation, he challenged to file a separate grievance. If the prison agrees with him, then the underlying grievance is reinstated. He can exhaust it all the way to the third level. If the prison disagrees with him, then he exhausts the separate challenge to the third level, and then he can file a lawsuit and argue under Sapp v. Kimbrell that improper screening prevented him from exhausting remedies on the underlying challenge. And how would Mr. Cortinez know about this change? I'm sorry? How would he know about the change? So in this specific case, he had received the letter, the July 30th letter, telling him how to challenge a cancellation. He had received the two other letters in response to prior appeals. It's in the Title 15. When Title 15 is amended, it's — there's an initial statement of reasons, a final statement of reasons that these are posted in the prison. I mean, that part of it is not on the record, the actual process of how a change to the regulations happens, but that's the general way that inmates find out about this. And again, the test under Ross v. Blake is not — remedies are unavailable in the situations where there's a dead end, when they are so opaque as to be unknowable. In this case, they're knowable, they're in the Title 15. Or if there's some kind of thwarting through machination, misrepresentation, intimidation, there is no evidence of that below. If there are no more questions, I just reiterate that the PLRA requires inmates to exhaust all available remedies in this case. Mr. Cortinis did not exhaust available remedies, and this Court should affirm. Do you wish to use your rebuttal time? I would just like to say that Mr. Cortinis' credibility was not undermined just because he had received 18 previous appeals. I mean, the lower court can't make that determination just because he had seen them before. The fact that he claims that he did not receive this letter, even though it said C attached, does not mean he lacks credibility to make this claim. Also, the fact that Mr. Cortinis wanted to call the person that signed the letter is important, because that person has firsthand knowledge of actually printing that letter out and signing it and possibly putting it in the mail and sending it to whoever — to the prison house. I think that is very important to call that person. And by not calling that person, that, in turn, prejudiced his decision on getting a continuance. This is the person that would have mailed the letter to Mr. Cortinis? This is the person who signed the letter, correct? I assume they signed — they sent out many letters. How would that person have a specific or independent recollection of what was attached to the letter? Well, at least they have a firsthand knowledge of seeing the letter itself. No one other than — no one has firsthand knowledge of even seeing this letter. We just assume that this letter is part of the decision because this is their custom and practice. However, if we had the person who actually put paper to pen on this letter, maybe we could have flushed that out a little bit. And also, the fact that we didn't call or the people below didn't call the prison official who went to go talk — ask Mr. Cortinis for this interview is also a problem. I mean, he's the only person who knows whether or not he actually conveyed to Mr. Cortinis that this interview is imperative to keeping his claim alive. If there are no further questions. Thank you very much. Thanks, counsel, for your argument. And the case of Cortinis v. Portillo is marked for submission. And we'll go to the last case on today's calendar, Anna Beatrice Biocini v. Sessions.
judges: Bea, Murguia, Soto